**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GWENDOLYN BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2822 |
| | § | |
| | § | |
| UNUM LIFE INSURANCE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this ERISA action, Gwendolyn Byrd challenges the termination of long-term disability benefits under the plan provided by her employer, Accenture LLP. Byrd alleges that the claims administrator, Unum Life Insurance of America ("Unum"), abused its discretion in terminating her benefits. Unum has moved for summary judgment that, as a matter of law, the benefit denial was not an abuse of discretion. (Docket Entry No. 10). Byrd has responded and cross-moved for summary judgment that she is entitled to the benefits. (Docket Entry No. 11). Unum has responded to the cross-motion. (Docket Entry No. 12).

Based on the motions and responses, the administrative record, and the applicable law, this court grants Unum's motion for summary judgment and denies Byrd's motion. Final judgment is entered by separate order. The reasons for these rulings are set out below.

**I.      The Summary Judgment Record**

Byrd was employed by Accenture, LLP as an accounting assistant, or "chargeback associate" from September 1999 until the onset of her disability in July 2003. (Docket Entry Nos. 1, 10). The position required frequent computer use and prolonged sitting. Standing, walking, and lifting of up

to 10 pounds were occasionally required. (Docket Entry No. 10-4, Exhibit B, UA-CL-LTD-000176). Byrd participated in Accenture's employee benefits package, including the Group Long-Term Disability Insurance Policy issued by Unum.

Byrd applied for disability benefits from Unum in July 2004. Unum approved the application and paid Byrd benefits under the policy from September 2003 to July 25, 2008. (Docket Entry No. 10). Unum then terminated the benefits payments based on medical evidence and opinions that Byrd was physically able to return to work in her own occupation. (*Id.*). Byrd appealed the decision to Unum's Appeals Unit. The file was reviewed and the original decision to terminate benefits was determined to be appropriate. (Docket Entry No. 10-8, Exhibit L, UA-CL-LTD-002224). Byrd filed this suit in federal court on September 1, 2009 under § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). (Docket Entry No. 1).

In this lawsuit, Byrd alleges that she currently suffers from the following medical conditions: lumbar radiculopathy, cervical discogenic pain, cervical radiculopathy, cervical spondylosis with C6-6 radiculopathy and tendonitis, epicondylitis, bilateral carpal tunnel and ulnar syndrome, and status post carpal and ulnar release. (Docket Entry No. 11). Byrd alleges that Unum's decision to terminate her disability benefits is not supported by substantial evidence because Unum failed to consider her lumbar radiculopathy and her cervical and upper extremity impairments. (Docket Entry No. 11). Byrd argues that Unum abused its discretion by failing to consider these conditions in determining her disability benefits. (*Id.*). Byrd seeks past damages of her unpaid long-term disability benefits and a declaratory judgment that she is entitled to future benefits under the policy. (*Id.*). Byrd also seeks attorney's fees. (*Id.*).

Unum moved for summary judgment that it did not abuse its discretion in terminating Byrd's

benefits under the long-term disability policy. (Docket Entry No. 10). Unum argues that its decision was supported by substantial evidence, including the medical records of Byrd's treating physicians, the opinion of Unum's own physicians, and the opinions of two licensed vocational consultants. Unum also points to the Social Security administrative law judge who heard and denied Byrd's disability social security claim. (Docket Entry No. 10). Unum provides the entire administrative claim file relevant to Byrd's claim for disability benefits as support for its decision to terminate benefits. (Docket Entry No. 10).

### A. The Relevant Policy Provisions

The parties agree that the Long-Term Disability Insurance Policy Accenture provided its employees is governed by ERISA, 29 U.S.C. § 1001 *et seq.* (Docket Entry No. 10-3, Exhibit A, UA-POL-LTD-000035). As a regular full-time employee (below manager level), Byrd was a member of Eligibility Group 2 under the Policy. (Docket Entry No. 10-2, Exhibit A, UA-POL-LTD-000003). The Policy provided that if the insured employee in this group met the Policy definition of disability, benefit-eligibility would begin after a 90-day elimination period. (*Id.* at UA-POL-LTD-000004). The Policy defined disability for Group 2 participants as being "limited from performing the material and substantial duties of [the employee's] regular occupation due to [her] sickness or injuries" and having "a 20 percent or more loss in [the employee's] index monthly earnings due to the same sickness or injury." (*Id.* at UA-POL-LTD-000016). "Material and substantial duties" was defined as duties that are "normally required for the performance of [the employee's] regular occupation," and "cannot be reasonably omitted or modified." (Docket Entry No. 10-3, Exhibit A, UA-POL-LTD-000038). "Limited" was defined as "what [the employee] cannot or [is] unable to do." (*Id.*).

The Policy provided that after 60 months of disability-benefits payment, an employee is disabled only if Unum determines that, due to the same sickness or injury, the employee is unable to perform the duties of *any* gainful occupation for which the employee is reasonably fitted by education, training, or experience. (Docket Entry No. 10-2, Exhibit A, UA-POL-LTD-000016). The Policy required that a disabled employee be under the regular care of a physician in order to be considered disabled. (*Id.*).

Accenture is the plan administrator, (Docket Entry No, 10-3, Exhibit A, UA-POL-LTD-000031), and Unum was the claims administrator. (Docket Entry No. 10). The Plan expressly gave Unum full discretion to interpret the Plan and make decisions about benefits:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(Docket Entry No. 10-3, Exhibit A, UA-POL-LTD-000036).

### B.    Byrd's Medical Records and Unum's Denial of Benefits

In April 2003, Byrd visited Dr. Lubor Jarolimek, an orthopedic surgeon in Houston, Texas, complaining of neck pain, bilateral shoulder pain, elbow pain, and bilateral wrist pain. (Admin. R. UA-CL-LTD-000034). Dr. Jarolimek obtained x-rays, an MRI, and an EMG exam to test skeletal, nerve, and muscle function. He diagnosed muscle spasm of the cervical spine, right upper extremity radiculopathy, bilateral epicondylitis ("tennis elbow") worse on the right than the left, and carpal tunnel syndrome. (*Id.*). Under Dr. Jarolimek's care, Byrd had right carpal tunnel release surgery

in 2004. She later underwent right epicondylar release surgery, and, in May 2005, left carpal tunnel release surgery. (*Id.*).

On July 2, 2003, Byrd stopped working as a chargeback associate at Accenture and applied for workers' compensation benefits. On July 12, 2004, Byrd applied for long-term disability benefits under Accenture's Group LTD Policy. Unum reviewed the records of Dr. Jarolimek, as well as the records of three other treating doctors: pain-management specialist Dr. Razira A. Saqer; Dr. Gertzbein; and Ron Kirkwood, D.O. Dr. Gertzbein treated Byrd for her tennis elbow in 2003 and reviewed her spine complaints. Dr. Gertzbein then referred Byrd to Dr. Saqer for pain medication consistent with the diagnosed neck and upper-extremity injuries. Dr. Kirkwood examined Byrd in March 2004 in connection with her Texas workers' compensation benefits.

On September 23, 2004, Unum advised Byrd that it was approving her claim and that benefits would be paid beginning October 1, 2003 (based on her last day worked, July 2, plus the 90-day elimination period), and continuing for as long as Byrd remained disabled as defined by the LTD policy. (Admin. R. UA-CL-LTD-000228-230).

In the meantime, Byrd applied for Social Security Disability Income benefits from the Social Security Administration. Her initial claim was denied and she appealed. In subsequent medical records, Dr. Jarolimek stated that Byrd was temporarily totally disabled and was estimated to remain so at least through September 30, 2005. While disabled, she was restricted from lifting or grasping with the right or left hand and from any activities requiring dexterity of either hand. In January 2006, Dr. Saqer reported that Byrd still could not use her hands in grasping, pushing, pulling, carrying, reaching, or repetitive movements. (Admin. R. UA-CL-LTD-000606). At that time, Unum had Byrd's medical records reviewed by Thomas Waymire, one of its vocational

rehabilitation consultants. Waymire confirmed that because Byrd's job responsibilities required keyboarding and frequent finger and hand dexterity, she was not able to perform her own occupation at that time. (Admin. R. UA-CL-LTD-000623). Unum continued to pay benefits.

In February 2006, the Social Security administrative law judge issued a decision after an evidentiary hearing, concluding that Byrd did not have an impairment that met the criteria of any listing of the relevant Social Security disability regulations. The ALJ emphasized the evaluation of independent medical expert Dr. Woodrow Janese. Dr. Janese testified that Byrd's medical records showed no evidence of disc herniation, no clinical deficits in strength and range of motion, and only a mild C6-7 abnormality. An EMG study revealed post-surgical improvement in the right carpal tunnel syndrome with resolution of the condition. Dr. Janese stated that Byrd was functionally capable of performing the equivalent of light work. The ALJ stated in the decision that he had considered Byrd's subjective complaints and testimony but several factors detracted from her credibility. Byrd's testimony referred to symptoms she had never reported to physicians, and examination results did not correspond to the symptoms she described. The ALJ noted that Byrd's past relevant work as a credit-card reporting clerk and an accounting clerk had been sedentary, and that the vocational expert had testified that Byrd was capable of performing all of her past relevant work. The ALJ denied Social Security Disability Income benefits. (Docket Entry No. 10-4, Exhibit C, UA-CL-LTD-000923-000927).

In November 2006, Dr. Stephen Esses, an orthopedic surgeon in Houston, Texas, restricted Byrd to lifting no more than 20 pounds. (Admin. R. UA-CL-LTD-000972). Dr. Saqer's records from that same time indicate that he limited Byrd's ability to sit, stand, and walk continuously to up to two hours each. (Admin. R. UA-CL-LTD-001072). In late 2007, Unum asked Byrd to have

another functional capacity evaluation. Byrd declined. (Admin. R. UA-CL-LTD-001818).

In January 2008, Unum's on-site physician, Dr. Valencia Clay, reviewed Byrd's medical records and questioned some of the restrictions and limitations placed on her. Dr. Clay noted that the 2006 functional capacity evaluation performed on Byrd indicated that she could perform work at the sedentary/light level. Dr. Clay recommended that Unum obtain an orthopedic independent medical examination of Byrd. (Admin. R. UA-CL-LTD-00833–1835). Unum arranged for an independent examination in March 2008 with Dr. David Vanderweide, a board-certified orthopedist. Byrd declined the examination. (Admin. R. UA-CL-LTD-00915).

In April 2008, Unum advised Byrd by letter that the "own occupation" period of disability under the Plan definition would end on September 30, 2008 (60 months from her original eligibility date). After that date, the "any occupation" definition of disability would apply. (Docket Entry No. 10-6, Exhibit J, UA-CL-LTD-001928-1929). Later that month, Unum scheduled an independent medical exam for Byrd with Dr. William Bryan, an orthopedic surgeon in Houston, Texas. Based on that examination, Dr. Bryan stated that he was able to put both Byrd's shoulders to a full range of motion without eliciting complaints and that her shoulders showed no evidence of pathology. He stated that because Byrd had not worked in nearly five years, he would expect her right elbow to be relatively comfortable, noting that the surgery she underwent has a very high success rate even in people who return to work in a relatively short time. Dr. Bryan noted that Byrd was able to leave the exam room at a brisk pace and walk at least 100 feet down the clinic hall without any observed difficulty in gait. Dr. Bryan concluded that he did not find any conditions in Byrd's shoulders, elbows, hands, or lower extremities that would impair her ability to perform the work responsibilities described. (Docket Entry No. 10-4, Exhibit D, UA-CL-LTD-001985-1986).

In May 2008, Unum provided Dr. Esses, Byrd's treating orthopedic physician, with written questions about his opinion of Byrd's health. Dr. Esses responded that he was recommending cervical epidural steroid injections. He confirmed that he had instructed Byrd to remain out of work and would certify her as disabled at that time. Dr. Esses did not know when Byrd would be able to return to work, but he imposed no specific physical restrictions or limitations. (Admin. R. UA-CL-LTD-002011-2012).

In July 2008, Unum had Byrd's medical records reviewed by an on-site physician, orthopedic surgeon Dr. Pat Younger. Dr. Younger's report discussed Dr. Bryan's findings and the spinal conditions he had not specifically addressed. Dr. Younger reviewed and discussed the past x-rays; five cervical MRIs, four EMGs of the upper extremities, the 2006 evaluation of the worker's compensation-designated physician, the records of Dr. Kirkwood and Dr. Saqer, the FCE report, and a 2007 lumbar MRI ordered by Dr. Esses. Dr. Younger noted that in April and May 2008, Byrd was not complaining to Dr. Esses, her treating physician, of lumbar pain, but was complaining of neck pain. After discussing the April 2008 cervical MRI and Dr. Esses's recommendation of cervical epidural steroid injections, Dr. Younger concluded that the restrictions and limitations were not supported by the medical evidence and that Byrd could work on a full-time basis in a sedentary occupation with frequent keyboarding. (Docket Entry No. 10-5, Exhibit E, UA-CL-LTD-002047-002050).

In response to questions posed by Dr. Younger, Dr. Esses responded that the recommended cervical epidural steroid injections had not been administered because they had not yet been approved by Byrd's workers' compensation carrier. Dr. Esses stated that he anticipated that at some point, Byrd would be able to return to a sedentary occupation on a full-time basis. (Docket Entry

No. 10-5, Exhibit F, UA-CL-LTD-002061).

Unum had Byrd's medical records reviewed on July 24, 2008 by Unum's in-house orthopedic surgeon, Dr. G. Lance Matheny, II. After reviewing the records, Dr. Matheny stated that the clinical information was not consistent with impairment of the cervical or lumbrosacral spine severe enough to preclude full-time sedentary-level work. Dr. Matheny further noted that the recommended epidural steroid injections could be done in conjunction with work and would not usually require more than a day or two out of work. (Docket Entry No. 10-5, Exhibit G, UA-CL-LTD-002072-2079). At around the same time, Unum's in-house vocational rehabilitation consultant, Shawn Lemons, reviewed Byrd's occupational and vocational records. The records included the current limits and restrictions imposed by medical and clinical personnel relating to vocational assessment. Lemons stated that from her review, it appeared that Byrd could work on a full-time basis in a sedentary occupation with frequent keyboarding. Lemons's review of the job description, occupational assessment, and physicians' comments showed that Byrd would be able to alternate her position as needed to avoid straining the neck. Lemons concluded that Byrd was able to perform her own occupation at that time. (Docket Entry No. 10-6, Exhibit H, UA-CL-LTD-002082).

In a July 28, 2008 letter, Unum advised Byrd of the determination that she was not precluded from performing her own occupation at that time. Unum invited Byrd to provide any additional information she or her physicians had supporting her disability claim. Unum also advised Byrd of her appeal rights under ERISA. (Docket Entry No. 10-6, Exhibit I, UA-CL-LTD-002089-2094). For the approximately 58 months from October 3, 2003 to July 25, 2008, Byrd had been paid long-term disability benefits totaling $61,195.99. (Docket Entry No. 10). Byrd retained counsel and

appealed the decision to terminate further benefits.

During the appeal, Unum had Byrd's medical records reviewed by a third on-site orthopedic surgeon, Dr. Tom Moses, in February 2009. Dr. Moses noted that as of July 25, 2008, Byrd was limited to occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds. Byrd could sit six to seven hours in an eight-hour day, with occasional changing of position as needed. She could alternate standing or walking for one or two hours each. Dr. Moses noted that Byrd did need to avoid excessive motion of her neck and should limit repetitive motions of her left hand to approximately 50 percent of the time and use a wrist brace. Dr. Moses found no restrictions on her right hand. Dr. Moses also found that Byrd could occasionally engage in overhead activity. Dr. Moses concluded that Byrd could work a full eight-hour day and that no further medical intervention was needed at that time. (Docket Entry No. 10-7, Exhibit J, UA-CL-LTD-002208-2218).

A second vocational rehabilitation consultant at Unum, G. Shannon O'Kelley, also reviewed Byrd's records in February 2009. O'Kelley noted that Byrd's occupation was sedentary and could be performed within the restrictions and limitations Dr. Moses outlined. O'Kelley found that Byrd could perform the material duties of her occupation. (Docket Entry No. 10-8, Exhibit K, UA-CL-LTD-002219-2221).

In March 2009, Unum's lead appeals consultant, David White, advised Byrd's attorneys that Unum had completed its appellate review and determined that its original decision to close her claim was appropriate. (Docket Entry No. 10-8, Exhibit L, UA-CL-LTD-002224-2227). Byrd filed this lawsuit.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325, 106 S. Ct. 2538. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).

**B.     ERISA**

ERISA requires a district court to review determinations made by employee benefit plans,

including employee disability plans. *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). If a plan document expressly confers on the plan administrator the authority to determine benefits and construe the plan terms, that is sufficient to invoke an abuse-of-discretion standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989). In the Fifth Circuit, even if the plan does not expressly give the decisionmaker discretionary authority, "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard." *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991); *see also Vercher v. Alexander & Alexander*, 379 F.3d 222, 226 (5th Cir. 2004); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597–98 (5th Cir. 1994); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100–01 (5th Cir. 1993).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citations omitted). "'If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). The plan administrator's decision is arbitrary "'only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Holland*, 756 F.3d at 246–247. (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)). Under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end.'" *Holland*, 576 F.3d at

247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 39 (5th Cir. 2007)).

### III. Analysis

The parties agree that the abuse of discretion standard applies.[1] (Docket Entry Nos. 10,11). The parties dispute whether Unum's decision to deny Byrd's disability benefits was based on substantial evidence. Byrd alleges that Unum failed to consider her lumbar radiculopathy and cervical and upper extremity impairments when it decided to terminate her benefits, and that this failure constitutes an abuse of discretion. (Docket Entry No. 11). Unum argues that its decision was based on substantial evidence, which included extensive medical records and reviews of Byrd's lumbar problems and cervical and upper extremity impairments, and that substantial evidence supported its decision. (Docket Entry No. 10).

Byrd contends that Unum's letter of July 28, 2008, which states that Unum's "IMA provider

---

[1] In long-term disability cases, abuse of discretion review is informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. The Fifth Circuit previously applied a "sliding scale" standard to conflict-of-interest cases, under which the greater the evidence of conflict, the less deference was given. *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 248 n.3 (5th Cir. 2009). In *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2349–50, 171 L. Ed. 2d 299 (2008) (internal quotation marks and citation omitted), the Supreme Court concluded that a structural conflict resulting from an insurer also serving as plan administrator was a factor that "should be taken into account on judicial review of a discretionary benefit determination," including when the administrator is a professional insurance company rather than a self-insured employer. Other factors to consider include whether an insurer has a history of biased claims administration or whether the administrator has taken active steps to reduce potential bias. *Id.* at 2351. Since *Glenn*, the Fifth Circuit has held that "much of our 'sliding scale' precedent is compatible with the Supreme Court's newly clarified 'factor' methodology, and *Glenn* does not supercede that precedent to the extent that it reflects the use of a conflict as a factor that would alter the relative weight of other factors." *Holland*, 576 F.3d at 240 n.3.
   Here, Unum was the claims administrator. Accenture was the plan administrator and retained the financial responsibility to pay any benefits due to plan participants. There is no structural conflict of interest or evidence of bias in Unum's ability to make claims determinations. The unaltered abuse-of-discretion standard applies.

did not identify any shoulder, elbow, hand or lower extremity conditions that would preclude [Byrd] from working," shows that Unum did not consider the lumbar radiculopathy because it was not specifically mentioned in the letter. (Docket Entry No. 11). Byrd argues that the decision was based on Dr. Bryan's April 25, 2008 independent medical examination, which did not evaluate her spine. In his report, Dr. Bryan stated that he "would defer any decision about her cervical and lumbar spine to Dr. Stephen Esses," her workers' compensation physician. (Docket Entry No. 10-4, Exhibit D, UA-CL-LTD-001985-001986). Byrd contends that Dr. Esses was not treating her spinal problems but instead was limiting his treatment to injuries compensable under workers' compensation, which included her shoulders, cervical, and upper extremity conditions. (Docket Entry No. 11).

The record includes not only the opinion of Dr. Bryan, but the opinions of three doctors who concluded that Byrd could perform her own sedentary job. Dr. Younger reviewed Byrd's medical records, relying not only on Dr. Bryan's independent medical examination of Byrd's extremity functions but also evaluating the spinal conditions not addressed in Dr. Bryan's report. (Docket Entry No. 10-5, Exhibit E, UA-CL-LTD-002048). Noting that in the summer of 2007, Byrd had developed new complaints of lumbar swelling, Dr. Younger stated:

> She was referred to Dr. Esses, an orthopaedic surgeon. He diagnosed paravertebral muscle spasms. A lumbar MRI 7/2007 did show degenerative changes with annular tears. There were no disc herniations, no spinal or foraminal stenosis and no nerve root compressions.
>
> Ms. Byrd is no longer treated by her operating orthopedist, Dr. Lubor Jarolimek or her pain physician, Dr. Saqer. She returned to spinal surgeon, Dr. Esses. This was noted by the IME examiner, Dr. Bryan. There are two visits to Dr. Esses 4/2008 and 5/2008. The complaint was not lumbar pain, but neck pain. . . .

(Docket Entry No. 10-5, Exhibit E, UA-CL-LTD-002049). The records Dr. Younger reviewed

contained references to the most recent pain-management notes on Byrd, including self-reports of ongoing lower back as well as thoracic shoulder pain. (Docket Entry No. 10-5, Exhibit E, UA-CL-LTD-002044). Dr. Younger concluded that the restrictions and limitations placed on Byrd's physical ability in 2006 appeared "overly restrictive" and not supported by the clinical record. (*Id.*).

The second doctor who reviewed Byrd's medical file was Dr. Matheny, an orthopedic surgeon. Unum asked Dr. Matheny to review the records, including the independent medical examination by Dr. Bryan and the restrictions listed in Dr. Younger's review, in order to determine whether Byrd could return to her own occupation full-time. Noting that Byrd had a history of neck, back, and upper-extremity complaints, Dr. Matheny found that recent orthopedic spine notes did not describe ongoing lower back or lower extremity complaints. He also noted that Byrd indicated she was no longer seeing the pain-management physician who had described her lower back and lower extremity complaints. (Docket Entry No. 10-5, Exhibit G, UA-CL-LTD-002078-2079). Dr. Matheny concluded that the cervical and lumbosacral spine problems documented in the clinical records were not consistent with impairment severe enough to preclude a full-time sedentary level job. Dr. Matheny stated the recommended epidural steroid injections could "be done in conjunction with work and would not usually be expected to require more than a day or two out of work." (*Id.*). Dr. Matheny's review of Byrd's clinical records, including both her back and neck complaints, indicated that she was not precluded from performing her own occupation.

When Byrd appealed the benefits termination, Unum had her medical records reviewed by a third physician, Dr. Thomas Moses. Byrd's letter of appeal to Unum on January 23, 2009 lists the medical conditions from which she continued to suffer. They included cervical discogenic pain, cervical radiculopathy, cervical spondylosis with C6-6 radiculopathy and tendonitis, epicondylitis,

bilateral carpal tunnel syndrome, and status post carpal and ulnar release. (Admin. R. UA-CL-LTD-002120). Although Byrd's letter does not mention lumbar pain or lumbar radiculopathy, Dr. Moses's report indicates that he reviewed documents relating to these issues as well. He specifically noted the findings of the 2007 lumbar spine MRI and 2007 EMG of the lower extremities. (Docket Entry No. 10-7, Exhibit J, UA-CL-LTD-002214). Dr. Moses also cited Byrd's complaints to Dr. Saqer of low back pain in July and September 2007 and the recommended caudal epidural steroid injections. Dr. Moses concluded that the clinical information indicated that Byrd could work for a full eight-hour day with some restrictions on lifting and movement. (*Id.*).

The 2006 decision by the administrative law judge as to Byrd's ineligibility for benefits under the Social Security Act has limited relevance to Unum's disability determination due to the different standards under ERISA and the administrative regime. The SSA has a stricter standard than the Plan. Under the SSA, "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment" that is of "such severity that [the claimant] cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives." 42 U.S.C. § 423(d)(1)(A), (2)(A). While ERISA plan administrators are not bound by a Social Security administrative law judge's determination, complete disregard for a contrary conclusion without explanation raises questions about whether an adverse benefits determination was "the product of a principled and deliberative reasoning process." *Metropolitan Life Ins. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2355 (2008) (Roberts, C.J., concurring) (quoting *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006)). Here, there is no inconsistency between Unum's decision and the ALJ's determination, but this court does not rely on the administrative law judge's denial of SSA benefits in analyzing whether Unum abused

its discretion.

A decision to deny benefits should be affirmed if supported by substantial evidence and is arbitrary "only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir.2002) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich*., 97 F.3d 822, 828 (5th Cir.1996)). The summary judgment record provides ample support for the decision to deny Byrd continued long-term disability benefits, beyond the 58 months of payments she received. The record establishes that the medical records relating to Byrd's cervical and lumbar complaints were reviewed and thoroughly considered by three board-certified orthopedic surgeons, in addition to the independent medical evaluation by Dr. Bryan. Unum also had the medical restrictions and limitations reviewed by two vocational specialists, who also concluded that Byrd was not precluded from performing the responsibilities of her own job. The evidence presented shows that Unum considered Byrd's lumbar and cervical health issues when it decided that she was able to work. The decision is based on substantial evidence and is not arbitrary. Unum did not abuse its discretion in denying benefits to Byrd.[2]

---

[2] Byrd's complaint also alleged that Unum breached its fiduciary duty in terminating her benefits "with the intention of unjustly enriching itself at the expense of Byrd." (Docket Entry No. 1). It appears that Byrd is seeking equitable relief. Section 502(a)(3) authorizes a plan participant or beneficiary to institute a civil action "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). However, it is well-settled law that relief under this section is restricted to "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 1078, 134 L.Ed.2d 130 (1996); *see also Tolson v. Avondale Indus.*, Inc., 141 F.3d 604, 610 (5th Cir.1998) (reasoning that "[b]ecause [the plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section [502(a)(1)], relief through the application of Section [502(a)(3)] would be inappropriate.").

Byrd sued for all the Plan benefits to which she may have been entitled under § 502(a)(1)(B) of ERISA. Byrd did not argue this claim as a separate basis for recovery in her cross-motion for summary judgment or in her response to Unum's motion. Byrd's only remedy is through a claim for denial of benefits under that section, rather than a breach of fiduciary duty claim brought under § 502(a)(3). *See McCall v.*

## IV. Conclusion

Unum's motion for summary judgment is granted and Byrd's motion is denied. Final judgment is entered by separate order.

SIGNED on August 5, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

*Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000) (citing *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992)). The claim for breach of fiduciary duty under ERISA is also dismissed.